DEN ON THE DEMISE OF JAMES McMURTRIE v. ABRAHAM McMURTRIE.

James McMurtrie by his last will, after describing the parcels of land devised, devised as follows : " I give Abraham the said place, during his life, and to John during his life; for default of male issue, the land shall return to the said Abraham and John, then to the next according to law; but it is not my will that none of it be sold,—I being the first purchaser, have a right to will it so; " *held,* that Abraham and John took estates in tail male, in their respective shares, with a fee expectant, on failure of male issue.

Under this will, as affected by *Act, Pat. Laws,* 53, explained by *Act, Pat. Laws,* 78, the estates vested in the eldest sons of Abraham and John, the first donees in tail.

" Return " will be construed " remain " to effectuate the testator's intent.

It must be an extreme case, in which the court will decree the will void for uncertainty.

Den ex dem. McMurtrie *v.* McMurtrie.

In order to attain intent of testator, words of limitation shall operate as words of purchase; implications shall supply verbal omissions; the letter shall give way; every inaccuracy of grammar, every impropriety of terms, shall be corrected by the general meaning, if that be clear and manifest.

General intent in a will, shall overrule particular intent, if it become necessary in order to carry the former into complete effect; and technical words shall have their legal effect, unless from subsequent inconsistent words, it is very clear, the testator meant otherwise.

Under act, *Rev. Laws*, 104, benefit of re-survey, and right to prior location and preemption in surplus lands, goes with the estate, and can be used by any tenant, to confirm not to defeat the estate.

This was an action of ejectment for lands in the county of Warren, and was argued on a state of the case agreed on, by the counsel of the parties.

The subject of dispute, was the construction of the will of Joseph McMurtrie, grandfather of the lessor of the plaintiff. The particular point of discussion, and so much of the will as is necessary to an understanding of the matter, will be developed by the opinion of the court.

*Saxton* and *I. H. Williamson,* for the plaintiff.

*Wall,* for the defendants.

HORNBLOWER, C. J. Joseph McMurtrie, the grand father of the lessor of the plaintiff, died seized of the premises in question in the year 1762, having first made his will, upon the construction of which, this cause depends. It bears date the 2d June, 1761, and so far as it is material, is as follows:— "And as for that worldly estate, wherewith it has pleased God to bless me, I dispose as follows—to my son Abram McMurtrie twenty chain that place that I now live on, and to my son John, the lower half containing twenty chain across, fronting both upon Delaware river, and far up to a white oak tree, marked for a line ; and also Greenwich road ; and them two lots shall go straight across. I give Abram the said place during his life; and to John during his life, for default of male issue, the land shall return to the said Abram and John, then to the next according to law, but it is not my will that none of it be sold, I being the first purchaser, have a right to will it so."

The testator then says, that his daughter Mary shall build at the Springs, at the line under the little hill, and have it her life time, and his daughter Agnes, from the white oak tree at the wagon road, which is forty chains across ; and at the end of their life, it shall return to Abram and John " during their lifetimes, and their lawful heirs for life." As for his plough horses and tackling, the testator says, " my will is that they be in partnership to the boys to plough, and are obliged to find· my wife a room and bed, and also all she requires, and lay in all provisions that she is need of all her lifetime ; and as for cattle and wood, divide them equally amongst them all, that all may have some cattle." After some words which are unintelligible, at least to me, he adds, " and also the low grounds they shall have each have equally, and likewise the orchard till John can plant one for himself."

The testator died in 1762, leaving his sons, John and Abraham, the devisees mentioned in his will, and his sons Joseph and James, and daughters Agnes and Mary, surviving him. John and Abraham took possession of the lands devised to them respectively, and released to each other. They both died seized of their respective tracts, and both had issue male and female. Abraham left eleven children, seven daughters and four sons ; of whom JAMES, the lessor of the plaintiff was the oldest, and Abraham, the defendant, the youngest, or at least younger than James. In 1820, Abraham, the defendant, upon an application to three Judges of the Common Pleas, obtained a partition of the premises, which had been devised to his father Abraham by his grand father Joseph McMurtrie, between himself and his brothers and sisters. James his elder brother, the lessor of the plaintiff, objected to this partition, claiming the whole premises as tenant in tail male, under the aforesaid will of their grand father Joseph McMurtrie ; and this action is brought by James, to recover that part of the premises now in possession of his brother Abraham, and which he holds under the partition aforesaid.

It will be perceived by the counsel, that in stating the will of Joseph McMurtrie, I have used the words, which it seemed to be admitted on the argument, were those intended to be

employed by the testator, by the hieroglyphics furnished us in the *fac simile* copies of the will.   Persons unacquainted with the lands of the testator, might find it difficult, if not impossible, to locate the premises devised to his children; but as that seems to be understood by the parties, we have nothing to do, but declare the intention of the testator, if he had any, as to the nature of the estates he gave to his sons John and Abraham.

No man who reads this will, can fail of perceiving, that the testator intended to give to his sons John and Abraham, estates for life, in the lands devised to them specifically; that if they had male issue, such issue should have the lands; but in default of male issue, the land should return to John and Abraham in fee, and it is further evident, that the testator, notwithstanding he had thus limited the estate, to his sons for life, and then to their issue male, did not intend to restrain them from a sale of the premises.   Whatever estate, the testator intended to give or supposed he had given by the preceding words in his will, he was evidently apprehensive that the devisees might have no power of alienation : he therefore says, it is not his intention " that none of it be sold."   The counsel for the plaintiff supposes this to be a mistake of the scrivener; that the word *not* must be rejected; or the words "none of it" be read " any of it," which instead of a license to sell, would be a prohibition of sale.   But I think the testator meant, what he has awkwardly expressed.   If he had prohibited a sale, by the devisees for life, he would not have thought it necessary to give a reason for it, nor is it likely he would have added such a prohibition at all, as most men understand that a mere tenant for life, cannot aliene, and very few know that a tenant in tail might defeat the estate by a common recovery.   The testator evidently thought he was going to do something unusual, and for which it seemed necessary for him, to give some reason—and therefore he has undertaken to annex the power of sale to an estate for life, and supposes he had a right to do so, because the land was his own. These words however are of very little importance, except so far, as they explain what the testator supposed he was doing, or serve to show his own understanding of what he had previously said.   In *Sondays case*, 9 Co. 127, the testator attempted to

restrain the devisee from making any alienation. The court considered this restriction as an evidence, that the testator intended to give his sons an estate tail, upon the ground, that if an estate for life only, such restriction would be idle; and yet it was held that the restraint was legally inoperative. So in this case, the testator understood that if he gave John and Abraham estates for life, strictly speaking, they would have no power of alienation ; and to show that such was not his intention, he took off the restriction, by the words under consideration.

This will it is admitted on all hands is very obscure, and I have sometimes doubted whether it is not void for uncertainty. Here is no devise of the land to the heirs of the tenants for life ; and though " for default of male issue," it is to return to John and Abraham, the testator does not tell us for what purpose; but says " then to the next, according to law." But it must be an extreme case, before we can relieve ourselves from the duty of giving a construction to the instrument, by declaring it void for uncertainty. *Powell on Dev.* 421, *Inglis* v. *The Trustees, &c.* 3 *Peters' U. S. R.* 117, 118. If the court can see a general intention, to create an estate which the law recognises and protects, it is to be carried into effect, though it cannot be done in the way contemplated by the testator. *Humburston* v. *Humburston,* 1 *P. Wms.* 332, and in *Chapman* v. *Brown,* 3 *Burr.* 1626. Lord MANSFIELD said, that in order to attain the intent, words of limitation shall operate as words of purchase ; implications shall supply verbal omissions ; the letter shall give way ; every inaccuracy of grammar ; every impropriety of terms, shall be corrected by the general meaning, if *that* be clear and manifest.

Imperfectly as the testator has expressed himself in this will, I think he has manifested a clear intention that the land should go to the male issue of his sons, if they had any ; for the devise over, is only in default of such issue. But in order to effectuate this intention, we must enlarge the estates specifically given to John and Abraham, by implication, so as to give them estates in tail male, with the fee simple expectant. For if John and Abraham took only estates for life, then, none of their children either male or female can take under this will. For there is not,

either in terms, or by implication, any devise over in fee, or otherwise after the death of John and Abraham, except "for default of male issue." But John and Abraham both had male issue, and therefore the limitation over in fee, could never take effect. I speak of the limitation over, in fee, because if the words "the land shall return to the said John and Abraham, then to the next according to law," mean any thing in the connection in which they stand, they must mean, that the estate shall go to them and their heirs at law—such I have no doubt was the intention of the testator.

It is now well settled, that a devise to A for life, and in default of issue, over &c. will raise a gift by implication, to the heirs of the body of A, which will attach to him under the rule in *Shelley's case,* and vest in him an estate tail in possession, notwithstanding numerous *dicta* in the books, that an express estate for life, shall not be enlarged by implication. *Hayes on Real estates,* 28, *Rule I.* to be found in the 7th vol. of the *Law Lib. Blackborn* v. *Edgely,* 1 *P. Wms.* 605 ; *Doe* v. *Applin,* 4 *T. R.* 82 ; *Den* v. *Puckey,* 5 *T. R.* 299 ; 6 *Cruise Title* 28, *Devise C.* 286, *s.* 42 ; *Id. sec.* 47 ; *Id. fol.* 289, *s.* 47 ; *Id. ch.* 12, *fol.* 272, *s.* 11, 12. It is scarcely necessary to cite authorities on this point ; but a reference to some of the above and other cases will show that the rule is the same, even where the devise is for life, and "no longer," or "*non-aliter.*"

In the language of some of the books, if the testator had a particular intention, and a general intention, the former must yield to the latter ; upon this principle, it might be difficult to settle this case. The testator intended to give his sons only a life estate, and he also intended that his daughters should not take, if his sons had male issue. These were both *particular* intents, while his *general* intention was to dispose of his whole estate. In *Jesson* v. *Wright,* or *Doe* v. *Jesson,* 2 *Blight R.* 1, and 3 *Maule* and *Selw.* 95. Lord REDESDALE remarks, that "to say that the general intent shall overrule the particular, is not the most accurate expression of the principle of decision : but that the rule is, that technical words shall have their legal effect, unless from subsequent inconsistent words,.it is very clear the testator meant otherwise." To apply the rule in this case,

the limitation over in fee, upon failure of male issue, is entirely inconsistent with the previous devise to John and Abraham for life. For the devise over, cannot take effect, if there is male issue; and then if John and Abraham had only and strictly a life estate, then male issue could not take, for here, they are words of limitation, and not of purchase; there is no devise of an original estate to them; they must take by descent or not at all; nor can the heirs general take, for the devise over in fee was only to take effect in default of male issue. Hence the argument is that the testator intended to give to his sons, such an estate as would descend to his male issue if he had any; and so by implication John and Abraham took estates in tail male with a fee expectant on failure of male issue. *Brice* v. *Smith Willes*, *R.* 1. But the counsel for the defendant insisted that such an implication could not be raised in the absence of any devise to the heirs; and seemed to think that no case could be found in which it had been done where there was no devise over after the life estate, to the heirs, or children, or issue of the testator.

It is necessary to distinguish between the cases. In one class of cases, the devise is generally to A, and his heirs, and then, upon a limitation over in default of special heirs, to a stranger, or on default of heirs generally, to some one who would be heir to A. In such cases a fee tail is raised by implication, in A; and in another class of cases, where the devisee is to A for life or to A, generally, and no direct devise to his heirs or his issue, but a limitation after the death of A, upon his *dying without heirs of his body*, then the law raises a gift by implication, to the heirs of the body of A which will vest in A, an estate tail in possession. *Sondays case*, 9 *Co.* 127, is one of the former class, so is *Blaxton* v. *Stone*, 3 *Mod*, 123; and several others may be found collected in *Ram on Wills*, 82 and seq. *Law Lib. vol.* 8.

The case of *Den* v. *Slater*, 5 *T. R.* 335, is a plain instance of the latter description of cases. The estate was given generally to Slater, with a devise over, upon his dying without a male heir, and the court say, "it is clear from all the cases upon the subject, that Slater took an estate tail." Lord KENYON

cites the case of *Blaxton* v. *Stone*, which shows, that he thought there was no difference between a devise to A and his heirs, and then a devise over in default of special heirs; and a devise to A generally, and a similar devise over. The intent is equally manifest in both cases, though the implication is necessarily more extensive in the latter case.

In *Brice* v. *Smith*, *Willes. R.* 1, though in that case the devise was to A and his heirs forever, with a limitation over, on failure of issue, yet the court say, "if a devise be to A, or to A for life, *without saying more*," and then devise over, "in case A dies without issue," these words will enlarge A's estate by implication, and give him an estate tail.

In *Nottingham* v. *Jennings*, *Comyn's R.* 82, same case 2 *P. Wms.* 23. The devise was the testator's son Francis and his *heirs;* and in default of *heirs* of Francis, to the heirs of the devisor. It was insisted that Francis took a fee; for after the devise to him, there was, in effect no devise at all; for the devisor's heirs would take by descent. HOLT, C. J. said, that though the *heirs* of the devisor could take nothing by the devise, yet it served to show the testator's intent, and so held, that Francis took an estate tail. *Webb* v. *Herring*, *Cro. Jac.* 415.

But the case of *Walter* v. *Drew*, *Comyn's R.* 372, is more like this. The devise was "if William Weaks, my son, shall happen to die and leave no issue of his body lawfully begotten, then and in that case, and not otherwise, I give my lands in L. to my son Richard, &c." Here was no devise in terms to William and yet it was adjudged that William took an estate tail.

In *Bamfield* v. *Popham* 1, *P. Wms.* 56, POWELL, J. said there was no difference between a deed and a will in this case; for if a man by deed give lands to A, without expressing any estate, and afterwards add the words, "if A die without issue, then, &c." this makes an estate tail; and though the Lord Keeper doubted as to a deed, yet in the case of a will, it was not denied.

But it was asked by the defendant's counsel, what would become of the provision for the widow, if John and Abraham took estates tail? This enquiry would be more appropriate if

---

Den ex dem. McMurtrie *v.* McMurtrie.

---

the plaintiff insisted, that John and Abraham took estates *for life* only.    But this objection I think is sufficiently answered, by what was said by the court in *Den. v. Slater.* 5  *T. R.* 535; and see *Doe* v. *Fyldes, Cowp.* 833.

If I am right in the view I have taken of this case, it is unnecessary to consider whether the devise over in fee is to John and Abraham severally of their respective portions, or by way of cross remainders.   Nor do I perceive that any light can be thrown upon the principle question, by the subsequent parts of the will.   The clauses are distinct and independent.   He gives life estates to his daughters with remainders to John and Abraham during their lives, and remainder to their lawful heirs in fee.   The words "to their heirs for life" can have no other meaning.   The low grounds are to be equally divided between his sons John and Abraham, and his two daughters Mary and Agnes.   The pronoun "they" can refer to no other persons and must include those he had before named, for there is nothing to limit its application to John and Abraham ; nor can it embrace his other children, for he cuts them off with 7s. 6d.

After the death of the testator, Abraham and John released to each other the tracts devised to them; and after their death, James the lessor of the plaintiff, and Abraham the defendant, who are sons of Abraham released to Joseph and John the sons of John, the part that had been devised to, and occupied by John, and Joseph and John, his sons, released to James and Abraham the part that had been devised to, and occupied by their father Abraham.   These instruments have not been read to us ; but if they are, what they are called, they cannot affect the case. If Joseph and John, the sons of John one of the first devisees, had no interest or estate in the land which had been devised to their uncle Abraham, they could by their release convey none to James and Abraham, his children.   Releases are to be construed according to the particular purposes for which they have been made.   If they are made to pass or extinguish rights, which are supposed to exist, they effect nothing, if there is no such right in existence.   *Solly* v. *Forbes,* 2 *Brod. and Bing.* 38; *Morris* v. *Wilford,* 2 *Shower,* 47.   If Abraham the defendant has any interest in the land devised to his father Abraham, it must be

under the will of his grand father, and not by the release from his cousins Joseph and John. As to the overplus lands, I think by the equity of our act of 1789, *Rev. Laws*, 104, the re-survey of it was made subsequent to that period, enured to the benefit of the heir in tail. This was so decided, if my recollection serves me, by the Chancellor of this State, in the case of *Romeyn* v. *Van Campen.*

By the 2d *Section* of the act of 26th August 1784, *Pat. Rev.* 53, it was enacted that all lands which had been devised in tail, *of any kind*, and had passed through one *descent* since the death of testator, and was *then* in the second or more remote descent, should be deemed estates in fee simple in the present possessor. And all devises *theretofore* made, which had not already passed through one descent; and such devises as sho uld *thereafter* be made *in tail of any kind*, should vest in the first taker after the *first devisee ; all* the estate of the devisor. And that no entailment of any lands should continue to entail the same, *in any case* whatever longer than the life of the first donee in tail.

By an act passed 23d March 1786, *Pat. Rev.* 78, the words "*through one descent*," *&c.* were explained to mean, "been possessed by the first devisee in tail ;" and the words "line of descent," to mean "line of entailment."

By these statutes, all *existing* entailments were abolished, and all new ones prohibited. Admitting then the devise to Abraham and John to be to them severally in *tail male*, they being the first donees in tail, the estate vested in their eldest sons in fee.

But the act of June 13th, 1820, after, in the 1st Section, declaring the effect of *future* devises for life, with remainder to heirs, &c., and in the 2d Section, declaring the effect of *future* devises in tail, *repeals* the 2d Section of the act of 1784, and the explanatory act of 1786, and adds these words, " that nothing in *this Section* shall effect an estate now held by devise, but the same shall descend, or be held, as if this Section had not been passed." *Rev. Laws*, 774.

---

Den ex dem. McMurtrie *v.* McMurtrie.

---

Upon the whole, though not without regret, I am of opinion the plaintiff is entitled to recover.

FORD, J. concurred.

RYERSON, J. The important enquiry in this case is, what estate did Abraham McMurtrie, the father of the lessor of the plaintiff, take under the will of *his* father Joseph McMurtrie.

There is a real obscurity about some parts of this will. And as it is perfectly manifest, both from its language and orthography, that the penman was very illiterate, we may perhaps expect equal ignorance of the principles and phraseology of the law. I shall therefore endeavour, as far as I can, to ascertain and present the real meaning and intention of the testator, without expecting to find it clothed in the ordinary language of the law.

There seems to be no doubt, that the first object of the testator was to give to his two sons Abraham and John, estates for life, in the lands to them respectively devised.

Another intent, arising by a necessary implication, is, that after the death of Abraham and John, the land should be enjoyed by their male issue, indefinitely. On failure of male issue of John and Abraham, the land to *return*, (that is to *remain*) to Abraham and John, and then to the next according to law. Now it is almost equally manifest, that here is a devise over of a remainder in fee to Abraham and John. It is true the technical language, *remain*, *remainder*, is not used, for the plain and obvious reason, that, (they having already enjoyed it) it was much more natural that a plain man, in such case, should use the word *return* to them, than *remain*, to them, to express his idea of giving them the residue of the estate in the lands. And after them, this residue was to go, to the next persons by law entitled to succeed to them, or their estate; that is their *heirs* at law, and thus extending this devise of the remainder, to the ultimate fee simple.

But I do not deem it important, to enquire whether this devise over, was in fee simple, fee tail general, fee conditional, after or without cross remainders. It sufficeth to say there is a devise over expressly, after the failure of male issue, thus to support by implication, a devise to the issue, and obviate the

objection, if it have any force, resulting from a double implication, first of a devise over, and from that, of a devise to the issue.

Having thus given my view, of the *will* and *intention* of the testator, I shall endeavour to apply to it, a few plain principles of law.

The absorbing rule to govern the exposition of a will, is, to effectuate the legal intention of the testator, if it can be done without violating the principles of law.

Another rule equally well settled, is, that where there is manifested a general, and also a particular intent, the particular intent shall be modified by the general intent, if it become necessary in order to carry the latter into complete effect.

Now it appears to me, only necessary to read over this will carefully, and deliberately, in order to perceive that the prevailing desire of the testator was to give the land in question to his son Abraham and his male descendants. And while the male line continued, no other relation of Abraham or of the testator, was designed to have any interest therein. I cannot make this intent plainer by any reasoning of *mine*, and shall not therefore attempt it. The law requires us to give effect to this intention, (it being perfectly lawful) so far at least, as this cause is to be affected thereby. I speak of the law as it stood when this will took effect, which is the law to govern its construction. Now this intention cannot be fully executed, under all circumstances, without raising by implication, an estate in special tail male, in the first devisee. For this object it is necessary to enlarge his life estate into an estate of inheritance.

This will be fully manifested as well as sustained and supported by consulting the cases collected in 6 *Cruise, Dig. Tit.* 28; *ch.* 12, 14.

And it avails nothing against this construction, that there is manifested a subordinate intention to give to Abraham, in the first instance, only an estate for life. The necessity and propriety of making this particular object yield to the general views of the testator, have been already delineated by too able hands, to permit me to attempt it. I shall on this subject content myself with a reference to the book above cited and the

powerful and conclusive argument of Sir W. Blackstone, in the well known case of *Perrin* v. *Blake*, and of Lord THURLOW in the case of *Jones* v. *Morgan*, the substance of which may be found in 6 *Cruise, Dig.* 392, &c. and 401, &c.

I am therefore of opinion that Abraham McMurtrie took an estate in special tail male ; and that the lessor, the heir in tail, is entitled to recover.

This case is not affected by our statute, for the distribution of estates tail, which has been passed long since the death of the testator. *Rev. Laws*, 774.

Nor do I perceive, that the plaintiff's right to recover, can be impugned by the re-survey, and location of the surplus, of this tract, by Abraham, the devisee in tail. If he acquired any rights by that act, over the estate, beyond what he acquired under the will, he has had the full benefit thereof, in the sale which he has already made, in fee, of a part of the tract, exceeding his right in the surplus. But it may well be questioned, whether that location gave him any power to defeat the dispositions of the will. The testator had, under our statute, *Rev. Laws*, 104, 5, annexed to his estate, at least a right to prior location, or pre-emption, in that surplus. This right goes with the estate, and can be used by any tenant, only to confirm, and not to defeat the estate. But I believe that it is now well settled, that without such re-survey, and appropriation of rights, the tenant may well hold to the ancient and reputed boundaries.

I am, upon the whole case, of the opinion, that judgment must be rendered for the plaintiff.

*Judgment for Plaintiff.*

AFFIRMED *by Court of Appeals, Halst. Dig.* 375.